IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANTHONY BALL,　　　　　　　　　　　　　　　　　　　CV 07-231-MA

　　　　　　Plaintiff,　　　　　　　　　　　　　OPINION AND ORDER

　　v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

　　　　　　Defendant.

　　**TIM WILBORN**
　　19093 S. Beavercreek Road, PMB #314
　　Oregon City, Oregon　97045

　　　　Attorney for Plaintiff

　　**KARIN J. IMMERGUT**
　　United States Attorney
　　**BRITANNIA I. HOBBS**
　　Assistant United States Attorney
　　1000 S.W. Third Avenue, Suite 600
　　Portland, OR　97204-2902

　　**KATHRYN A. MILLER**
　　Special Assistant United States Attorney
　　Social Security Administration
　　701 5th Avenue, Suite 2900 M/S 901
　　Seattle, WA　98104-7075

　　　　Attorneys for Defendant

**MARSH, Judge:**

1- OPINION AND ORDER

The matter before the Court is plaintiff's (Ball), Social Security Complaint, seeking judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act. 42 U.S.C. §§ 401-33.

On May 11, 2001, Ball applied for DIB, alleging that he became disabled June 30, 2000, due to a combination of impairments, including post-traumatic stress disorder (PTSD), degenerative disc disease and left shoulder degenerative joint disease. His application was denied initially and upon reconsideration, at which point Ball requested a hearing before an Administrative Law Judge (ALJ). On October 23, 2003 the ALJ determined that Ball was not disabled. Ball requested review of this decision by the Appeals Council, which remanded the application to the ALJ for further action. Another hearing was held on February 22, 2006, at which Ball was again represented by an attorney. On May 20, 2006 the ALJ issued another unfavorable decision, finding Ball not disabled. This became the Commissioner's final decision, of which Ball now seeks judicial review.

The parties agree that the Commissioner's final decision should be reversed, and that this case should be remanded. They disagree whether further administrative proceedings are necessary before Ball is entitled to payment of benefits.

2- OPINION AND ORDER

Ball argues that further proceedings are unnecessary because there are not any issues left to resolve before finding him disabled. *See Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001)(further proceedings are unnecessary if the record is fully developed and clearly requires a finding of disability). According to Ball, the Court should credit the allegedly wrongly rejected opinions of Steven Dobscha, M.D., which are reflected in an attorney-created check-the-box questionnaire Dr. Dobscha filled out on February 26, 2002. Ball contends Dr. Dobscha's answers establish that Ball meets the criteria for Listed Impairment 12.06 (Anxiety Related Disorders) on the basis of his PTSD. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing impairments considered so severe as to automatically constitute a disability); *see also* 20 C.F.R. § 404.1520(a)(4)(iii)(if the ALJ finds at step three that a claimant meets or equals one of the listed impairments, the ALJ will find the claimant disabled).

Under the "crediting-as-true" doctrine evidence should be credited and an immediate award of benefits directed when the ALJ has failed to provide legally sufficient reasons for rejecting such evidence and no outstanding issues remain for a determination of disability to be made if the evidence is credited. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).

3- OPINION AND ORDER

The ALJ thoroughly considered whether Ball's PTSD met or equaled Listed Impairment 12.06, which he noted to require a combination of the A and B criteria, or the A and C criteria, as set forth in that listing.  The ALJ found that while Ball "demonstrates some of the 'A' criteria," such as anxiety, the B criteria were not met because Ball's anxiety disorder did not cause marked restrictions.  To the contrary, the ALJ found that Ball had "mild restrictions in his activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence and pace, and no episodes of decompensation."  Finally, the ALJ found that Ball did not demonstrate the 'C' criteria, which requires "a complete inability to function independently outside the area of one's home."

The ALJ's step three findings are rooted in his categorical rejection of Ball's credibility.  First, the ALJ noted that contrary to Ball's testimony, evidence showed Ball did not stop working in June 2000 because of interpersonal conflicts at work caused by his PTSD and an inability to meet the physical requirements of the job, but because the job was eliminated and Ball declined reassignment to a similar position in another location.  Second, the ALJ found that many of Ball's alleged symptoms were not supported by objective medical evidence, and there was ample evidence of malingering and exaggeration.  For

4- OPINION AND ORDER

instance, the ALJ reviewed Ball's Veteran's Administration (VA) disability record, which showed that Ball "changed his story depending on whether he wished to portray disability due to his PTSD, or [due to] his physical impairments." Although Ball was eventually granted benefits through the VA, medical providers there expressed skepticism about Ball's motives and the validity of his complaints. They commented that he "appears to say and do whatever is necessary to get claim approval and [his benefits] increased," and that Ball was "invested in proving he has something wrong for service connection."

Indeed, the ALJ found that the origin of Ball's claim that PTSD was connected to his military service was suspect at best. According to Ball, he was part of the United Nations Command workforce at the North-South Korean border that was ambushed in August 1976. This historical event became known as the "Axe Murder Incident" because one of the members of the force was killed with a hatchet. Ball claims he was severely beaten by North Korean soldiers and as a result he developed PTSD and shoulder problems. The ALJ reviewed Ball's military record and found that although Ball was assigned to Korea and stationed in the general area at that time, there is no record of him being assigned to the location of the incident, and Ball is not listed as one of the four men injured in the incident. Significantly, the earliest medical report Ball produced in which he complained

of a left shoulder injury is from May 1999, at which time he claimed he injured his shoulder in 1976 by doing martial arts in Korea.

In any event, the VA seems to have believed Ball's improbable story. Dr. Dobscha was Ball's "treating psychiatrist" at the VA, reportedly seeing Ball for 20 minutes at a time, four to six times per year. As previously stated, on February 26, 2002 Dr. Dobscha checked boxes and lodged a few hand-written comments on a worksheet provided to him by Ball's attorney. He checked the box indicating that Ball was "markedly" limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, and that he had various other "moderate" work-related functional impairments.

The ALJ rejected Dr. Dobscha's "opinion" as reflected by these check-marks because it appeared Dr. Dobscha and, the VA at large, had accepted Ball's claims about the "Axe Murder Incident" notwithstanding Ball's historically unreliable reporting reflected in the VA's own records. Moreover, the VA granted benefits to Ball on a piecemeal basis, finding for example that Ball was 10 percent disabled due to athletes foot and 10 percent disabled due to shaving bumps. The ALJ cited this "disconnect" as one of several examples in the record where the VA's

6- OPINION AND ORDER

determinations contrast with the medical evidence upon which they are ostensibly based.

Since I find the ALJ's assessment of this anomalous record to be reasonable and based on substantial evidence, I decline to credit as true Dr. Dobscha's assessment of Ball's work-related functional limitations.

The Commissioner concedes that the ALJ erred at step four, and that his alternative step five finding is also flawed.  The Commissioner asks this Court to remand for further proceedings under sentence four of 42 U.S.C. § 405(g), to allow him to hold a new hearing, to reevaluate lay witness testimony, and to reevaluate Ball's RFC "as necessary" and then obtain supplemental vocational expert testimony at step four and, if necessary, step five.  *See Massachi v. Astrue*, 486 F. 3d 1149, 1152-53 (9th Cir. 2007)(vocational expert testimony must be consistent with the DOT, or logically explain any variance, on the record); *see also* DICTIONARY OF OCCUPATIONAL TITLES, U.S. DEP'T OF LABOR, OFFICE OF ADMINISTRATIVE LAW JUDGES (4th ed. 1991); *see also* SSR 00-4p (classifying occupations by exertional and skill level).

I concur with the Commissioner that further proceedings are necessary to obtain supplemental vocational expert testimony, and to address all lay witness testimony.  By no means is a finding of disability directed on the present record.  As should be clear

7- OPINION AND ORDER

by now, I do noT find any merit to Ball's arguments that the ALJ wrongly rejected his credibility, failed to properly consider the significance of his VA disability rating and receipt of benefits, or failed to provide legally sufficient reasons for rejecting Dr. Dobscha's opinion. Therefore, I affirm the ALJ's evaluation of these issues as based on substantial evidence and legally sufficient reasoning.

## CONCLUSION

Based on the foregoing, the Commissioner's Motion to Remand (#16) for further proceedings is GRANTED.

IT IS SO ORDERED.

DATED this _14 day of February, 2008.

                                                /s/  Malcolm F. Marsh
                                                Malcolm F. Marsh
                                                United States District Judge